James E. Cecchi
**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Counsel for Plaintiffs*
[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL KARWOSKI, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| AMERICAN WATER WORKS COMPANY, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Michael Karwoski ("Plaintiff"), individually, and on behalf of all similarly situated persons, alleges the following against Defendant American Water Works Company, Inc. ("American Water," "Defendant," or the "Company"), based on personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by his counsel and review of public documents, as to all other matters.

## I.    INTRODUCTION

1.    Plaintiff brings this class action against Defendant for its failure to properly protect and secure his personal identifiable information ("PII") and the PII of other American Water customers. Defendant's billing portal, MyWater, contains the PII of its customers and includes

names, addresses, American Water account information, customer bank account information, credit and other payment card information, and other data provided by its customers. This information is highly valuable to nefarious actors.

2.      Defendant provides water and wastewater services to approximately 3.4 million customers in fourteen (14) states.

3.      On October 3, 2024, American Water announced to the public through a regulatory filing that its computer systems and networks were hacked (the "Data Breach"). On October 7, 2024, the Company posted notice of the Data Breach on its website.  That notice advised customers of the continued potential harm to customer data, steps it needed to take to handle the Data Breach including shutting down the Company's online payment billing and payment portal systems, and work being done in the aftermath of the Data Breach.[1]

4.      Defendant failed to adequately protect Plaintiff's and Class Members' PII—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect its customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

5.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) adequately vet its data security practices; (iii) warn Plaintiff and Class Members of American Water's inadequate information security practices; and (iv) effectively secure hardware containing

---

[1] *IT Security FAQs – Reactivation of Systems*, American Water, https://amwater.com/corp/security-faq (last visited Oct. 20, 2024).

protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal law.

6.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to ensure that American Water had adequate and reasonable safeguards and measures in place to protect the PII of Plaintiff and Class Members after that information was transferred and entrusted to it in the regular course of business. More specifically, American Water failed to take and implement available steps to prevent an unauthorized disclosure of data, and failed to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption, storage, and destruction of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to unknown and unauthorized third parties.

7.    Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe in any further transfers of their sensitive data to third parties and they should be entitled to injunctive and other equitable relief.

8.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses, including, but not limited to, a diminution in the value of their private and confidential information, the loss of the benefit of their contractual bargain with Defendant, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

9.    Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose PII was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## II.  PARTIES

10.     Plaintiff Michael Karwoski is a citizen and resident of the State of Illinois and a customer of American Water. Plaintiff provided his PII to American Water as a condition to opening and maintaining an account with American Water and to receive American Water's services. He received notice of the Data Breach from American Water during the week of October 14, 2024 through his MyWater billing portal. Plaintiff is taking steps to secure his PII, including implementing a freeze with national credit reporting agencies.

11.     Defendant American Water Works Company, Inc. is a Delaware corporation with its principal place of business located at 1 Water Street, Camden, New Jersey 08102.

## III.  JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class Members who are diverse from Defendant, and (4) there are more than 100 Class Members.

13.     The Court has general personal jurisdiction over Defendant because Defendant has its principal place of business in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## IV.  FACTUAL ALLEGATIONS

### A.      American Water – A Regulated Water and Wastewater Utility Company

15.     American Water is the largest regulated water and wastewater provider in the United States.[2]  American Water provides its services to over 14 million individuals in 14 states

---

[2] *About American Water*, American Water, https://amwater.com/corp/About-Us/ (last visited Oct. 21, 2024).

and on 18 military installations.[3] The 14 states include: California, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Maryland, Missouri, New Jersey, Pennsylvania, Tennessee, Virginia, and West Virginia.[4]

16.    American Water's procedures and protocols require that its customers provide it with confidential, sensitive, and private information that may be necessary or required to receive American Water's services.

17.    From the outset of each customer's and Class Member's receipt of services from American Water, the Company represents and assures them that American Water is "committed to protecting the privacy and security of your data."[5]

18.    In a further effort to assure customers that American Water is doing all that is necessary and required to protect the confidentiality of their PII, Defendant purportedly adopted protocols and practices that it represents to customers are followed with respect to their PII (the "Privacy Policy").[6]

19.    American Water represents in its Privacy Policy that it obtains and uses personal information to provide its customers with clean, reliable drinking water; communicate with its customers by answering questions and comments and providing customer service; improve or personalize its services; communicate with its customers about new features or additional services offered by American Water; to protect the Company and others; and for other lawful purposes or as it may disclose to its consumers.[7]

_____

[3] *Id.*

[4] *Id.*

[5] *Privacy Policy*, American Water, https://amwater.com/corp/privacy-policy (last visited Oct. 21, 2024).

[6] *Id.*

[7] *Id.*

20.     Defendant also states that it protects its customers' information by "maintain[ing] organizational, technical, and administrative measures designed to protect personal data within [its] organization against unauthorized access, destruction, loss, alteration or misuse."[8] It further represents that its customers' "personal data is only accessible to a limited number of personnel who need access to the information to perform their duties."[9]

21.     American Water also claims to be "the first U.S. water and wastewater company and the third utility to earn the Support Anti-Terrorism by Fostering Effective Technologies (SAFETY) Act designation."[10]

### B.    *The Data Breach*

22.     As American Water admits in its most recent regulatory filing with the United States Securities and Exchange Commission ("SEC"), on October 3, 2024, an unknown third party breached its computer networks and systems, enabling that party or entity to access the PII of yet-to-be determined numbers of Class Members.[11] American Water currently serves over 14 million individuals across 14 states. Upon information and belief, the Data Breach impacted millions of individuals.

23.     American Water was a clear target for cyber thieves who recognized that as a critical infrastructure company, it collects, maintains, and even creates PII, for millions of individuals in the United States.

24.     On October 7, 2024, American Water published notice of the Data Breach on its website. During the week of October 14, 2024, American Water published notice of the Data

---

[8] *Id.*

[9] *Id.*

[10] *Cybersecurity,* American Water, https://amwater.com/corp/About-Us/Safety/cybersecurity (last visited Oct. 21, 2024).

[11] *American Water Works Company Inc., Current Report (Form 8-K)*, United States Securities and Exchange Commission (SEC), available at: https://bit.ly/3YvvrGN (last visited Oct. 21, 2024).

Breach on MyWater.com, Defendant's billing portal. American Water has yet to file notices with any states' attorney general offices regarding the Data Breach.

25.    The Data Breach was clearly foreseeable to Defendant. It is well known, and is further alleged below, that cyber-attacks against critical infrastructure companies such as Defendant are targeted and frequent. Such data breaches against the critical infrastructure have become widespread.

26.    Furthermore, the Cybersecurity and Infrastructure Security Agency ("CISA") of the United States has categorized water and wastewater systems as critical infrastructure.[12] As a provider of critical infrastructure, American Water knew or should have known that there was a significant risk of a cyber-attack on its computer networks and systems. The Department of Homeland Security states that "[c]ybersecurity threats to critical infrastructure are one of the most significant strategic risks for the United States" and that "nation-states are targeting critical infrastructure to collect information and gain access to industrial control systems in the energy, nuclear, *water*, aviation, and critical manufacturing sectors."[13]

27.    Given the fact that this was a targeted data breach against a critical infrastructure provider, it was foreseeable to American Water that the compromised PII could be used by hackers and cyber criminals in a variety of different ways. For example, PII can be used to identify or trace an individual's identity including the names, Social Security numbers and driver's license information either alone or in combination with other personal or identifying information that is connected or linked to an individual which could include one's birthplace, birth date, and mother's

---

[12] *Critical Infrastructure Sectors,* Cybersecurity and Infrastructure Security Agency (CISA), https://www.cisa.gov/topics/critical-infrastructure-security-and-resilience/critical-infrastructure-sectors (lasted visited Oct. 21, 2024)

[13] *Secure Cyberspace and Critical Infrastructure,* Department of Homeland Security (DHS), https://www.dhs.gov/secure-cyberspace-and-critical-infrastructure (last visited Oct. 21, 2024) (emphasis added).

maiden name. Cyber criminals, who now possess Class Members' PII, can readily obtain their tax returns or open fraudulent credit card accounts in their names. American Water was conscious of and could foresee the risk of data breaches given its position as a critical infrastructure provider and the well documented and reported data breaches that have occurred throughout this industry over a number of years, with increasing frequency.

28.     The increased frequency of data breaches has even captured the attention of the Federal Bureau of Investigations and the United States Secret Service, both of whom have issued warnings to potential targets.

**C.     *Plaintiff's Experience***

29.     Plaintiff is an American Water customer who provided his PII to American Water as a condition to opening and maintaining an account with American Water and to receive American Water's services.

30.     Plaintiff provided his PII to American Water and trusted the company would use reasonable measures to protect it according to its policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

31.     At the time of the Data Breach, Defendant collected and retained Plaintiff's and Class Members' PII in its systems.

32.     Plaintiff has been injured by the compromise of his PII.

33.     Had Plaintiff known that American Water does not adequately protect PII, he would not have agreed to provide his sensitive PII to Defendant and would not have agreed to be a customer of American Water.

34.     Plaintiff's bank account information is directly connected to his American Water billing account.  He has already spent many hours reviewing his bank account information for

fraudulent transactions and will continue to do so. He will also continue to review his financial accounts for fraud and identity theft. He is regularly receiving suspicious phishing texts arising from the Data Breach.

35.    As a result of and following the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach to protect himself from identity theft and fraud. He has monitored, and continues to monitor, his accounts, and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and duties.

36.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that was entrusted to Defendant, which was compromised in and as a result of the Data Breach.

37.    Plaintiff suffered lost time, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

38.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals that will continue for his lifetime.

39.    Defendant obtained and continues to maintain Plaintiff's PII, and thus has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

40.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

41.    Further, Plaintiff is and will remain at risk of harm in the future because American

Water continues to maintain his confidential PII but does not take adequate steps to protect that information from a data breach. Accordingly, Plaintiff's PII faces an imminent risk of disclosure in a future American Water data breach.

## V.  CLASS ALLEGATIONS

42.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following classes (together, the "Class"):

**<u>Nationwide Class</u>**
All individuals residing in the United States whose PII was compromised in the Data Breach, including all individuals who received notice of the Data Breach.

**<u>Illinois Subclass</u>**
All individuals residing in Illinois whose PII was compromised in the Data Breach, including all individuals who were notified the Data Breach.

43.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned, as well as his/her judicial staff and immediate family members.

44.     Plaintiff reserves the right to modify or amend the definition of the proposed Class, as well as to add subclasses, before the Court determines whether certification is appropriate.

45.     The proposed Class meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

46.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes the proposed Class includes millions of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

47.     <u>Commonality</u>. There are questions of law and fact common to the Class which

predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

- Whether Defendant engaged in the conduct alleged herein;

- Whether Defendant's conduct violated the Federal Trade Commission Act ("FTCA");

- When Defendant learned of the Data Breach;

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

- Whether Defendant's data security systems, prior to and during the Data Breach, were consistent with industry standards;

- Whether Defendant owed duties to Class Members to safeguard their PII;

- Whether Defendant breached its duties to Class Members to safeguard their PII;

- Whether hackers obtained Class Members' PII via the Data Breach;

- Whether Defendant had legal duties to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

- Whether Defendant breached its duties to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

- Whether Defendant knew or should have known its data security systems and monitoring processes were deficient;

- What damages Plaintiff and Class Members suffered as a result of Defendant's

misconduct;

- Whether Defendant's conduct was negligent;

- Whether Defendant breached implied contracts with Plaintiff and Class Members;

- Whether Defendant was unjustly enriched;

- Whether Plaintiff and Class Members are entitled to damages;

- Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

- Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

48.     Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Defendant's common misconduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

49.     Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

50.     Predominance. Defendant has engaged in common courses of conduct toward Plaintiff and Class Members. For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above

predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

51.     <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

52.     Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

53.     Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names, email and/or postal addresses, and phone numbers of Class Members affected by the Data Breach.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>
**Negligence and Negligence Per Se**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the**
**Illinois Subclass, Against American Water)**

54.     Plaintiff incorporates and realleges paragraphs 1-52 as if fully set forth herein.

55.     Plaintiff and Class Members provided their PII to Defendant as a condition of receiving services.

56.     Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

57.     By assuming the responsibility to collect and store this data, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

58.     Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

59.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

60.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

61.     Defendant had and continues to have duties to adequately disclose that the PII of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such

notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

62.     Defendant breached its duties, pursuant to the FTCA and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII, including in choosing its vendors;

b. Failing to hold vendors with whom it shared sensitive PII to adequate standards of data protection;

c. Allowing unauthorized access to Plaintiff's and Class Members' PII;

d. Failing to detect in a timely manner that Plaintiff's and Class Members' PII had been compromised;

e. Failing to remove former customers' PII it was no longer required to retain pursuant to regulations; and

f. Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

63.     Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

64.     Plaintiff and Class Members were within the class of persons the FTCA was

intended to protect and the type of harm that resulted from the Data Breach was the type of harm this statute was intended to guard against.

65. Defendant's violation of Section 5 of the FTCA constitutes negligence per se.

66. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

67. Defendant breached its duties to Plaintiff and Class Members under Section 5 of the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

68. Plaintiff and Class Members were foreseeable victims of Defendant's violations of Section 5 of the FTCA.

69. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

70. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to them. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches at large corporations that collect and store PII.

71. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

72. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class Members, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored

on its systems.

73.     It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to them.

74.     Plaintiff and Class Members had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

75.     Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

76.     Defendant's duties extended to protecting Plaintiff and Class Members from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

77.     Defendant has admitted that the PII of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

78.     But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

79.     There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The PII of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

80.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy;

(ii) lost or diminished value of PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

81.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

82.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

83.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

84.     Defendant's negligent conduct is ongoing, in that it still holds the PII of Plaintiff and Class Members in an unsafe and insecure manner.

85.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the Illinois Subclass, Against American Water)

86.     Plaintiff incorporates and realleges paragraphs 1-52 as if fully set forth herein.

87.     Defendant offered to provide services to its customers, including Plaintiff and Class Members, in exchange for payment.

88.     Defendant also required Plaintiff and Class Members to provide it with their PII in order to receive services.

89.     In turn, Defendant impliedly promised to protect Plaintiff's and Class Members' PII through adequate data security measures.

90.     Plaintiff and Class Members accepted Defendant's offer by providing their valuable PII to Defendant in exchange for Plaintiff and Class Members receiving Defendant's services, and then by paying for and receiving the same.

91.     Plaintiff and Class Members would not have done the foregoing but for the above-described agreement with the company.

92.     A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PII to Defendant in exchange for, amongst other things, the protection of such information.

93.     Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

94.     However, Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

95.     In sum, Plaintiff and Class Members have performed under the relevant

agreements, or such performance was waived by the conduct of Defendant.

96.    As a reasonably foreseeable result of the Data Breach, Plaintiff and Class Members were harmed by Defendant's failure to use reasonable data security measures to store their PII, including, but not limited to, the actual harm through the loss of their PII to cybercriminals.

97.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial, along with their costs and attorneys' fees incurred in this action.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the Illinois Subclass, Against American Water)

98.    Plaintiff incorporates and realleges paragraphs 1-52 as if fully set forth herein.

99.    This count is brought in the alternative to Plaintiff's breach of express and/or implied contract claims.

100.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made by or on behalf of its customers for services.

101.    As such, a portion of the value and monies derived from payments made by its customers for services is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

102.    Plaintiff and Class Members conferred a monetary benefit on Defendant in providing it with their valuable PII.

103.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

104.    In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead

of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective (or no) security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profit over the requisite security.

105.    Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff or Class Members for the value that their PII provided.

106.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the benefits that Plaintiff and Class Members conferred upon it.

107.    Plaintiff and Class Members have no adequate remedy at law.

108.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

109.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

**COUNT IV**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ICLS 505/1, *et seq*.**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the**
**Illinois Subclass, Against American Water)**

110.    Plaintiff incorporates and realleges paragraphs 1-52 as if fully set forth herein.

111.    This count is brought under the Illinois Consumer Fraud and Deceptive Business

Practices Act ("ICFA").

112.    Plaintiff and Class Members are "consumers"  as defined in 815 Ill. Comp. Stat. §

505/1(e).

113.    Plaintiff, the Class, and Defendant are "persons" as defined in 815 Ill. Comp. Stat.

§ 505/1(c).

114.    The ICFA applies to Defendant because Defendant engaged in "trade" or

"commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f).

Defendant engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp.

Stat. § 505/1(b) and (d).

115.    Defendant violated ICFA by, *inter alia*:

- failing to implement and maintain security and privacy measures to protect
  Plaintiff's and Class Members' PII, which was a direct and proximate cause of the
  Data Breach;

- failing to identify foreseeable security and privacy risks, remediate identified
  security and privacy risks, and adequately improve security and privacy measures
  following previous cybersecurity incidents, which was a direct and proximate
  cause of the Data Breach;

- failing to comply with common law and statutory duties pertaining to the security

and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

- omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII; and

- omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

116. Defendant's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

117. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its omissions.

118. Had Defendant disclosed to Plaintiff and Class Members (or their third-party agents) that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

119. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

120.    As a direct and proximate cause of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continued to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identify theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

121.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

122.    Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiff and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

123.    Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiff and the Class of the nature and extent of the Data Breach pursuant to the Illinois PII Protection Act, 815 ICLS 530/1, *et seq*.

124.    Pursuant to 815 Ill. Comp. Stat. § 501/10a(a), Plaintiff and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendant's violations of the ICFA.

## COUNT V
**Declaratory and Injunctive Relief, 28 U.S.C. § 2201 (On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the Illinois Subclass, Against American Water)**

125.    Plaintiff incorporates and realleges paragraphs 1-52 as if fully set forth herein.

126.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

127.    Defendant owes a duty of care to Plaintiff and Class Members that required it to adequately secure their PII.

128.    Defendant still possesses Plaintiff's and Class Members' PII, yet does not adequately protect PII against the threat of a data breach.

129.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and Class Members.

130.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and Defendant's ongoing failure to address the security failings that led to such exposure.

131.    There is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the breach to meet its obligations and legal duties.

132.    Plaintiff, therefore, seeks a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, being ordered as follows:

    a.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    b.  ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    c.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

d. ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

e. ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

f. ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any PII not necessary for its provision of services;

g. ordering that Defendant conduct regular database scanning and security checks; and

h. prohibiting Defendant from maintaining PII of Plaintiff and Class Members on a cloud-based database;

i. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

j. ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive PII;

k. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding paragraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

l. requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to

protect themselves;

m.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment; and

n.  such other and further relief as this Court may deem just and proper.

WHEREFORE, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court enter an Order:

A.  Certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class, pursuant to Federal Rule of Civil Procedure 23;

B.  Granting equitable relief and enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.  Granting injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

D.  For an award of actual damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

E.  For an award of punitive damages, as allowable by law;

F.  For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

G.    Pre- and post-judgment interest on any amounts awarded; and

H.    Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 22, 2024                    Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
Email: jcecchi@carellabyrne.com

Janine L. Pollack
Lori G. Feldman
Tiffany Wong
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone:  (917) 983-2707
Fax: (888) 421-4173
Email: jpollack@4-justice.com
Email : lfeldman@4-justice.com
Email : Eservice@4-justice.com

David J. George
Brittany Sackrin
**GEORGE FELDMAN MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com